LAW OFFICES OF YOLANDA HUANG
YOLANDA HUANG, SBN 104543
475 14th Street, Suite 500
Oakland, CA 94612
Telephone: (510) 839-1200
Facsimile:  (510) 444-6698

Attorneys for Plaintiff
Candace Steel

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CANDACE STEEL,<br><br>             Plaintiff,<br><br>      vs.<br><br>**ALAMEDA COUNTY SHERIFF'S OFFICE**, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, T. POPE, T. RUSSELL, D. SKOLDQVIST, LT. HATTAWAY, SGT. CALAGARI, SADIE DIVINE (#512), DEBRA FARMANIAN, ERICA WEATHERBEE (#238), MONICA POPE, DEPUTY WINSTEAD, KYA CAINE, DEPUTY BOCANEGRA, ALAMEDA COUNTY and John & Jane DOEs, Nos. 1 - 50.<br>              **and,**<br>**The CALIFORNIA FORENSIC MEDICAL GROUP**, a corporation; its Employees and Sub-Contractors, and Rick & Ruth ROEs Nos. 1-50,<br><br>              Defendants. | Case No.:<br><br>COMPLAINT FOR DEPRIVATION OF FEDERAL CIVIL RIGHTS, MEDICAL MALPRACTICE, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, NEGLIGENCE<br><br><br>JURY TRIAL DEMANDED |

Plaintiff CANDACE STEEL by and through her attorneys brings this action against Defendants Alameda County Sherriff's Office ("ASCO") and certain of its employees, and against The California Forensic Medical Group ("CFMG") and certain of its employees (collectively, "Defendants"), for deprivation of civil rights guaranteed by the United States Constitution, and for various torts under the common law of the State of California.  Plaintiff's claims arise from the Defendants' barbaric conduct – conduct that is not condoned, and that has never been condoned, by any civilized society, much less the United States and the people of the State of California.  What is even worse, Defendants' atrocious treatment of Plaintiff was motivated by greed and was inflicted on Plaintiff pursuant to an institutionalized set of practices and policies followed by Defendants for the sole purpose of pursuing profit at the expense and by the suffering of wards of the State such as Plaintiff.  Plaintiff seeks damages under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution for the cruel and inhumane conduct imposed upon her, as well as punitive damages for Defendants' intentional and willful commission of common law torts against her.

## JURISDICTION

1. This action is brought pursuant to the Fourth, Eighth and Fourteenth Amendments to the United State Constitution, by way of the Civil Rights Acts, 42 U.S.C. §§1981, 1983 et seq. and 1988.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331 (claims arising under the United States Constitution) and §1343 (claims brought to address deprivations, under color of state authority, of rights privileges, and immunities secured by the United States Constitution), and, by pendent jurisdiction, Secs. 52.1, and 50, of the California Civil Code and the aforementioned statutory and constitutional provisions.

3. Plaintiff further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE AND INTRADISTRICT ASSIGNMENT

4. The claims alleged herein arose in the County of Alameda, State of California. Therefore, venue and assignment, under 28 U.S.C. § 1391(b), lies in the United States District Court for the Northern District of California, San Francisco Division or Oakland Division.

## JURY DEMAND

5. Plaintiff respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiff Candace Steele is a former prisoner incarcerated at the Santa Rita Jail.

### The ASCO Defendants

7. Defendant ALAMEDA COUNTY SHERIFF'S OFFICE ("ACSO") is a "public entity" within the definition of Cal. Govt. Code § 811.2.

8. Defendant GREGORY J. AHERN is, and at all times relevant to this Complaint was, the Sheriff of Alameda County. As Sheriff of Alameda County, Defendant Ahern has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail. Defendant Sheriff AHERN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Sherriff AHERN has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiff seek in this Complaint, will continue in the future to

proximately cause, the injuries and violations of rights set forth fully below. Defendant Sheriff AHERN is sued in his official capacity only.

9. Defendant BRETT M. KETELES is, and at all times relevant to this Complaint was, the Assistant Sheriff of Alameda County in charge of the Detentions and Corrections Unit ("DCU"), which includes the Santa Rita Jail. As Assistant Sheriff of Alameda County in charge of DCU, Defendant KETELES has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail. Defendant Assistant Sheriff KETELES has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Assistant Sheriff KETELES has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiff seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Assistant Sheriff KETELES is sued in his official capacity only.

10. Defendant TOM MADIGAN is, and at all times relevant to this Complaint was, the Commander in Charge of DCU, which includes the Santa Rita Jail. As the Commander in Charge of DCU, Defendant MADIGAN has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail. Defendant MADIGAN has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below. Defendant MADIGAN has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiff seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant MADIGAN is sued in his official capacity only.

11.    Defendant T. RUSSELL is, and at all times relevant to this Complaint was, the Detention and Corrections Commander of ACSO.  As the Detention and Corrections Commander of ACSO, Defendant RUSSELL has at times relevant to this Complaint held a command and policy making position with regard to County Jails, including Santa Rita Jail.  Defendant RUSSELL has caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at Santa Rita Jail, as described fully below.  Defendant RUSSELL has, wholly or in part, directly and proximately caused and, in the absence of the injunctive relief which Plaintiff seek in this Complaint, will continue in the future to proximately cause, the injuries and violations of rights set forth fully below. Defendant RUSSELL is sued in his official capacity only.

    12.    Defendant D. SKOLDQVIST is, and at all times relevant to this Complaint was, the Watch Commander for Santa Rita Jail.  Defendants T. RUSSELL, LT. HATTAWAY, and SGT. CALIGARI are, and at all times relevant to this Complaint were responsible officers for Santa Rita Jail.  At all times relevant to this Complaint, Defendants SKOLDQVIST, RUSSELL, HATTAWAY, and CALIGARI were employees of the Sheriff who held supervisory, command and/or policy-making positions, and who participated in the authorization, planning, supervision, and execution of the conduct complained of herein.  Defendants SKOLDQVIST, RUSSELL, HATTAWAY, and CALIGARI are sued in their official capacities only.

    13.    Defendants Deputies DIVINE, FARMANIAN, WEATHERBEE, POPE, WINSTEAD, CAINE, BOCANEGRA, DEPUTY 'A', and DEPUTY "S", were guards and deputies on duty at Santa Rita Jail with direct control over Plaintiff.  Defendants DIVINE, FARMANIAN, WEATHERBEE, POPE, WINSTEAD, CAINE, BOCANEGRA, DEPUTY 'A', and DEPUTY "S" are the deputies on duty on July 23, 2017, who were directly involved in placing Plaintiff into the

5
**COMPLAINT; DEMAND FOR JURY TRIAL**
*Steel v. Alameda County Sheriff's Office et al.,*  United States District Court, Northern District of California, Case No. _____

isolation cell as a means of disregarding her complaints of pain; placing her in isolation without adequate clothing, without a towel or blanket; ignoring her hours and hours of cries and screams; closing the grate on the door in order to muffle her screams; and only directing their attention to her when the cries of the baby could be heard. These individual deputies are sued in their individual capacity.

14. Each and every Defendant named herein was at all times relevant to this Complaint an officer or employee of the Alameda County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within the scope of their employment with ASCO.

### The CFMG Defendants

15. Defendant CALIFORNIA FORENSIC MEDICAL GROUP ("CFMG") is an active, domestic, for-profit corporation incorporated in the State of California with its principal place of business in San Diego, California. Defendant CFMG contracts with ASCO to provide pre-natal, gynecological, obstetrical, and maternal services at Santa Rita Jail. Defendants RICK and RUTH ROEs 1-50 are CFMG employees who work at Santa Rita Jail. At all times relevant to this Complaint, Defendants CFMG and RICK and RUTH ROEs 1-50 were agents of the Alameda County Sheriff's Office, acting under the color of law within the meaning of 42 U.S.C. § 1983, and acting pursuant to the authority of ASCO and within the scope of their agency with ASCO.

### STATEMENT OF FACTS

### Sheriff Ahearn's For-Profit Private Contract for Medical Services

16. Over the past five years, Sheriff Ahearn has overseen an unprecedented increase in the salaries of Sheriff's office personnel at Santa Rita Jail. Salaries and benefits at SRJ have increased by $12.44 million dollars since 2013. As a result, being a jail guard at SRJ is one of – if

not the most – remunerative jobs in the entire country that a high school graduate with no college education can get. A starting jail guards make approximately $100,000 per year.

17. That $12.4 million dollar increase between 2013 and 2018 amounted to almost 20% of the Sherriff's office SRJ budget over that period.

18. Over the same period, while remuneration for Sheriff's office deputies and personnel at SRJ increased by nearly 20%, the SRJ jail population for whom the Sherriff was responsible *declined*.

19. According to ACSO, the average daily population at SRJ was 3,431 inmates in June 2013 and had fallen to 2,825 by June 2015. Upon information and belief, the average daily population is now between 2,200 and 2,500. Thus, the population at SRJ has declined by about 30% at the same time that remuneration for Sheriff's office deputies and personnel at SRJ increased by nearly 20%.

20. Funding for many of the services for prisoner derived from charges imposed on prisoners themselves, including co-pay charges for medical care for each and every request for medical care. During this period, ACSO entered into contracts with private, for-profit companies to provide basic and crucial services to SRJ inmates. Among these for-profit companies is Defendant CFMG.

21. During this period of time, as part of cost savings, the incarceration of women prisoners in Alameda County was consolidated at Santa Rita Jail. All women arrested are booked, processed and otherwise housed at Santa Rita Jail.

*ACSO's Contract with CFMG*

22. ACSO contracts with Defendant CFMG to provide all health care services of any type needed by any inmate at SRJ. CFMG's contract specifies a set price based on average daily inmate population ("ADP").

23. Crucially, the CFMG contract specifies that CFMG itself is solely responsible for all costs incurred in connection with any health care services provided to inmates outside the jail and that CFMG is not entitled to and will not receive any reimbursement from ACSO for the cost of services provided to inmates by hospitals or by any non-CFMG personnel. The cost for all such services is borne solely by CFMG.

24. ACSO's contract with CFMG explicitly states that CFMG will pay for, among other services, any and all "inpatient hospitalization costs". If an inmate receives inpatient hospitalization services, CFMG must pay the total cost of the medical care provided, "regardless of the level of cost incurred."

25. "Inpatient hospitalization" care within the meaning of the CFMG contract includes labor and delivery services for an SRJ inmate to deliver a baby. Thus, ASCO's contract with CFMG mandates that CFMG bear the cost of all in-patient labor and delivery services for Santa Rita Jail inmates.

26. Put more plainly, if a pregnant Santa Rita Jail inmate goes to the hospital to deliver her baby, CFMG pays. An inmate forced to deliver her baby at the Jail does not cost CFMG anything additional.

27. The Santa Rita Jail is not equipped with labor and delivery rooms or with other necessary and basic equipment and facilities that are needed to care for women in childbirth.

28. The CFMG staff at Santa Rita Jail are not trained in caring for women in childbirth.

29. CFMG' contract with ASCO specifies that CFMG alone will determine "the necessity and appropriateness of inpatient hospital care".

30. The contract also specifies that in the event a third-party payor such as an insurer pays for part or all of any medical service provided to an inmate outside the walls of SRJ, CFMG must turn over half of that third-party payment to the Sheriff's office. In other words, even if CFMG is reimbursed for its costs for outside medical care provided to inmates, the Sheriff's office takes half of the reimbursement even though it paid nothing for the outside medical care.

31. By requiring CFMG to pay for any and all medical care provided outside of SRJ to any SRJ inmate, and by limiting CFMG's ability to recover any amount CFMG pays for such care, ACSO's contract with CFMG creates a financial incentive and imperative for CFMG to refuse and withhold inpatient hospitalization services to all inmates, including inmates in active labor.

32. By specifying that CFMG alone will determine "the necessity and appropriateness of inpatient hospital care," ACSO's contract with CFMG enables CFMG to refuse and withhold inpatient hospital care to inmates in active labor.

33. The medical provider in the San Francisco County jail is not a for-profit correctional healthcare company such as CFMG. It is the County Department of Public Health, which has no financial incentive to deny care.

34. The medical provider in the Contra Costa County jail is not a for-profit correctional healthcare company such as CFMG. It is the County Department of Public Health, which has no financial incentive to deny care.

### CFMG Forced Plaintiff To Give Birth In An Isolation Cell At The Jail

35. On July 21, 2017, Plaintiff entered Santa Rita Jail shortly after midnight. She had been arrested on misdemeanors.

36. Before incarceration at the Jail, at or about 6:00 – 7:30 on the evening of July 20, 2017, Plaintiff was seen by doctors and other medical staff at Valley Care Hospital. Plaintiff was brought to Valley Care by the police, for the purpose of medical clearance.

37. Plaintiff was observed by doctors and other medical staff at the Valley Care Emergency Department to be at least eight months pregnant.

38. Plaintiff was sent to the Labor & Delivery Department at Valley Care in the evening of July 20, 2017. Plaintiff informed doctors and/or other medical staff at the Labor & Delivery Department that she had smoked methamphetamines in approximately the fifth month of pregnancy, that she smoked tobacco daily, that she had smoked marijuana within the last day, and that she drank alcohol during her pregnancy, including during the seventh or eight month or pregnancy.

39. Plaintiff also informed doctors and/or other medical staff at the Labor & Delivery Department on July 20, 2017 that she had experienced seizures with a prior pregnancy approximately two and a half years prior and that the prior pregnancy had ended with spontaneous delivery of a baby.

40. Plaintiff also informed doctors and/or other medical staff at the Labor & Delivery Department on July 20, 2017 that she had received no pre-natal care for the 2017 pregnancy and that she did not know her actual due date.

41. Plaintiff was diagnosed at the Labor & Delivery Department on July 20, 2017 with a urinary tract infection.

42. Left untreated, a urinary tract infection can lead to pre-term labor and delivery.

43. When Plaintiff entered Santa Rita Jail at about 12:25pm on July 21, 2017, the jail intake form noted that Plaintiff had a history of seizures, had received no pre-natal care, did not know her due date, and had been diagnosed with a urinary tract infection.

44. Because the jail intake form noted that Plaintiff had a history of seizures, had received no pre-natal care, did not know her due date, smoked methamphetamines in approximately the fifth month of pregnancy, smoked marijuana smoked and tobacco daily, and had been diagnosed with a urinary tract infection, CFMG medical personnel at Santa Rita Jail should have recognized that Plaintiff presented a higher than normal pregnancy risk.

45. Later during the morning of July 21, 2017, at or about 11:00 am, Plaintiff reported uterine cramping to CFMG staff.

46. By approximately 7:30 pm on July 21, 2017, Plaintiff was experiencing contractions. The fetus was observed by CFMG staff to be below Plaintiff's diaphragm.

47. Later during the evening of July 21, 2017, at Valley Care Hospital, Plaintiff tested positive for fetal fibronectin.

48. A positive fetal fibronectin test indicates an increased risk of pre-term labor. Nonetheless, Plaintiff was transferred back to Santa Rita Jail and placed in a non-medical Housing Unit.

49. On July 23, 2017, sometime during or before the early afternoon, Plaintiff, while at the Housing Unit, complained of cramping and pain.

50. Plaintiff was in so much pain that she could not walk but was instead only able to crawl on her hands and knees. Her medical distress was clear and apparent.

51. The other women in the Housing Unit, pressed the emergency button, reporting to the control staff that Plaintiff was experiencing clear medical distress.

52. A CFMG nurse examined Plaintiff at the Housing Unit. The CFMG nurse announced that Plaintiff was not dilated, was only eight months pregnant, only had a stomachache, and exaggerating her distress.

53. The Deputies on duty, based on the CFMG nurse's statement that Plaintiff was complaining and exaggerating her distress, placed Plaintiff in an isolation cell as punishment.

54. The isolation cell had not been cleaned, was a cold concrete room with a cold concrete floor, a solid metal door, a metal and concrete bed, a metal toilet and a metal sink.

55. In the isolation cell, Plaintiff was screaming in pain. The Deputies closed the slider-window on the door to the cell to muffle the sound of her screaming.

56. Plaintiff, in the isolation cell, screamed in pain for several hours, past a shift change of the guards, and still no one did anything to help her.

57. Plaintiff was terrified, having been totally abandoned. No one was there to help her through this experience. Plaintiff was afraid that her baby could die, and she could die.

58. After many hours, the screaming stopped and the other inmates heard the sound of a crying baby. Plaintiff had given birth, alone, in pain, without medical care or any other assistance from CFMG, in a cold, concrete, dirty isolation cell at Santa Rita Jail.

59. Plaintiff's baby was born with the umbilical cord wrapped around its neck. Out of pure instinct, Plaintiff put her fingers into the baby's mouth to open its airways so that the baby could start breathing. After the baby's birth, Plaintiff had no had no means to wash or clean the baby or herself. Plaintiff had no blankets, towels or other materials to dry off, or even wrap the baby in.

60. Only after the sheriff deputies heard the baby cry did they even bother to open the metal door to Plaintiff's isolation cell. Plaintiff and the baby were cold and wet and covered with blood and the fluids of labor and childbirth.

### Applicable Community Standards

61. Defendants' conduct toward Plaintiff falls far short of acceptable conditions under the United States Constitution. The Eighth Amendment to the U.S. Constitution requires that correctional facilities "must ensure that inmates receive adequate . . . medical care." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

62. Locking a woman in the throes of childbirth in a cold, concrete isolation cell at the Santa Rita Jail - without any medical care – without even a towel and ignoring her screams and pleas for help does not constitute "adequate medical care."

63. California Regulations also provide a ready benchmark for what constitutes "adequate medical care."

64. California Code of Regulations (hereinafter "CCR") § 1210(b) specifies that "[f]or each inmate treated for health conditions for which additional treatment, special accommodations and/or a schedule of follow-up care is/are needed during the period of incarceration, responsible health care staff shall develop a written treatment plan."

65. Under CCR § 3355.2(b), all inmates with a confirmed pregnancy are entitled by California law to a treatment and care plan regimen.

66. Upon information and belief, ACSO and CFMG did not comply with standards clearly defined in CCR §§ 1210(b) and 3355.2(b). Plaintiff was denied the benefit of such a treatment and care plan. No plan of care was determined for Plaintiff by an Obstetrical Physician or Obstetrical Nurse Practitioner.

**FIRST CLAIM FOR RELIEF**

**DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983
(Against ACSO And CFMG)**

67.   Plaintiff repeats and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

68.   At all relevant times herein, Defendant CALIFORNIA FORENSIC MEDICAL GROUP acted under color of State law.

69.   At all relevant times herein, Defendant CFMG established and/or followed policies, procedures, customs, and or practices, and those policies were the cause of violation of Plaintiff's constitutional rights granted pursuant to 42 U.S.C. § 1983, including those under the Fourth, Eighth and Fourteenth Amendments.  All of the aforementioned acts of the Defendant CFMG, their agents, servants and employees, were carried out jointly with ACSO under the color of state law.

70.   At all relevant times herein, Defendant ALAMEDA COUNTY SHERIFF'S OFFICE delegated to Defendant CFMG the traditional public function of determining and controlling the provision of medical services to Plaintiff in such a way as was deliberately calculated to deny Plaintiff access to adequate medical care.  The denial of necessary and appropriate medical services was imposed in order to reduce CFMG's costs under its contract with ASCO, specifically pursuant to the pricing provisions of that contract which penalized CFMG for allowing the provision of any outside medical care, regardless of the medical necessity of such care.

71.   At all relevant times herein, Defendant CFMG acted jointly and intentionally with Defendant ACSO, pursuant to a customary plan to restrict Plaintiff from obtaining medically necessary and appropriate medical care.

72. At all relevant times herein, Plaintiff's right to necessary and appropriate medical services under the Eighth Amendment of the U.S. Constitution was clearly established. The contours of the right to necessary and appropriate medical services was made sufficiently clear by, among other things, the California Regulations cited herein. The contours of the right to necessary and appropriate medical services was also made sufficiently clear by the knowledge shared by all civilized societies that no woman may be locked in an isolation cell without medical care and left to deliver a baby on her own.

73. At all relevant times herein, Plaintiff's right to be free of unreasonable seizure under the Fourth Amendment of the U.S. Constitution was clearly established. The contours of the right to right to be free of unreasonable seizure was made sufficiently clear by the knowledge shared by all civilized societies that no woman may be locked in an isolation cell without medical care and left to deliver a baby on her own.

74. At all relevant times herein, Defendants CFMG and ACSO acted with deliberate indifference to the violation of Plaintiff's rights. As shown above, CFMG and ACSO were aware of the substantial risk of serious harm to Plaintiff's health and safety created by the denial of necessary and appropriate medical services and CFMG and ACSO deliberately disregarded that risk.

75. At all relevant times herein, there existed a pervasive entwinement and close nexus between Defendant CFMG and Defendant ACSO, in that CFMG was at all relevant times delegated by ACSO the traditional public function of determining the need for, and providing medical care to, Plaintiff.

76. The close nexus between Defendants CFMG and ACSO is the legal cause of injuries to Plaintiff and, as a result, Plaintiff has sustained general and special damages, as well as incurring

attorneys' fees, costs, and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

**SECOND CLAIM FOR RELIEF**
**MEDICAL MALPRACTICE**
**(Against CFMG)**

77.  CFMG had a duty to use such skill, prudence, and diligence as other members of the medical commonly possess and exercise in supervising and providing care to Plaintiff, an inmate for whose health and medical care CFMG was responsible, and who had a conformed late-term pregnancy.

78.  On July 21, 2017, CFMG breached its duty to Plaintiff by not classifying Plaintiff as having a higher risk pregnancy than normal.  CFMG did not exercise prudence and diligence equal to that which other members of the medical commonly normally possess and exercise when it failed to classify Plaintiff as having a higher risk pregnancy than normal in light of the fact that Plaintiff's medical intake form at the Santa Rita Jail noted that Plaintiff had a history of seizures, had received no pre-natal care, did not know her due date, smoked methamphetamines in approximately the fifth month of pregnancy, smoked marijuana and tobacco daily, and had been diagnosed with a urinary tract infection.

79.  CFMG's breach of its duty to Plaintiff was the proximate cause of Plaintiff's removal from the Outpatient Housing Unit at the Santa Rita Jail and her placement in the general Housing Unit - where Plaintiff was injured by being forced to give birth alone in an isolation cell - upon her return from Valley Care Hospital on July 22, 2017.

80.  The injury inflicted upon Plaintiff – being forced to give birth alone in a cold, concrete isolation cell, without any medical care, without even a towel or a blanket – resulted in substantial emotional and physical damage to Plaintiff.

81. On July 23, 2017, CFMG breached its duty to Plaintiff by intentionally refusing to acknowledge that Plaintiff was in active labor despite the facts that Plaintiff was suffering cramps and seizures, presented a high-risk pregnancy, and was in so much pain that she could not stand and had difficulty walking.

82. CFMG intentionally refused to acknowledge that Plaintiff was in active labor because doing so would have caused CFMG to incur substantial unreimbursed costs, under it contract with ASCO, to provide Plaintiff with the in-patient hospitalization care reasonably required to care for Plaintiff in a medically appropriate fashion.

83. CFMG's breach of its duty to Plaintiff was the proximate cause of Plaintiff's confinement to an isolation cell and the subsequent withholding of all medical Care from Plaintiff while she was for many hours in the throes of childbirth.

84. The injury inflicted upon Plaintiff – being forced to give birth alone in an isolation cell, without any medical care – resulted in substantial emotional and physical damage to Plaintiff.

## THIRD CLAIM FOR RELIEF
### Intentional Infliction Of Emotional Distress
### (Against All Defendants)

85. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

86. Defendants engaged in extreme and outrageous conduct with the intent to cause Plaintiff, or reckless disregard for the certainty of causing Plaintiff, extreme emotional distress by locking Plaintiff, while she was was in the throes of childbirth, in an isolation cell at the Santa Rita Jail - without any medical care – and by ignoring her screams and pleas for help.

87. Plaintiff in fact suffered severe and extreme emotional distress due to being locked in an isolation cell at the Santa Rita Jail, without any medical care while in the throes of childbirth, and by having her screams and pleas for help ignored.

88. Defendant's outrageous conduct in locking Plaintiff, while she was in the throes of childbirth, in an isolation cell at the Santa Rita Jail – without any medical care – and by ignoring her screams and pleas for help was the actual and proximate cause of the extreme emotional distress suffered by Plaintiff.

89. Defendants' conduct was committed through the acts of their employees, who were at all times acting within the scope of the0r employment and pursuant to established policies and practices of ACSO and CFMG.

90. By operation of CCR § 815.2(a), ACSO is liable for the injuries to Plaintiff that were proximately caused by its employees' acts and omissions, undertaken within the scope of their employment, because those acts and omissions would and do also give rise to a cause of action against those employees in their personal capacities.

### FOURTH CLAIM FOR RELIEF
### NEGLIGENCE PER SE

**(Against ASCO and CFMG)**

91. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

92. ACSO and CFMG violated CCR § 3355.2(b), by failing to provide Plaintiff, who had a confirmed pregnancy, the benefit of a treatment and care plan regimen. Such a treatment and care plan regimen would by definition not provide for or permit Defendants to lock Plaintiff, while she was in the throes of childbirth, in an isolation cell at the Santa Rita Jail – without any medical care – and would not provide for or permit Defendants to ignore her screams and pleas for help.

93. On September 9, 2017, CFMG adopted a Police and Procedure Manual for Santa Rita Jail which provides that "Prenatal and postnatal care shall be provided in accordance with the treatment plan provided by the responsible physician or their designee or an established OB/GYN specialist" G09(4)  CFMG will follow a "treatment plan provided by the responsible physician or designee…" G09(2).  CFMG Policy G09 indicates knowledge of and an acknowledgement of the requirements of CCR § 3355.2(b), and the existence of CFMG's duty to provide a treatment plan for pregnant prisoners.

94. ACSO and CFMG's failure to provide Plaintiff, who had a confirmed pregnancy, the benefit of a treatment and care plan regimen provided by a responsible physician or qualified specialist was the proximate cause of Plaintiff's injury.

95. CCR §3355.2(b) was designed, among other things, to ensure that childbirth inside County jails in the State of California is sanitary, healthy for baby and mother, and comports, at a bare minimum, with civilized standards of decency.  As a direct result of Defendants ASCO and CFMG's violation CCR § 3355.2(b), Plaintiff experienced childbirth that was not sanitary or healthy for baby and mother, and that did not comport with civilized standards of decency.

96. By operation of CCR § 815.2(a), ACSO is liable for the injuries to Plaintiff that were proximately caused by its employees' acts and omissions, undertaken within the scope of their employment, because those acts and omissions would and do also give rise to a cause of action against those employees in their personal capacities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request the Court to:

1. Award compensatory and punitive damages to the Plaintiff against Defendants in amounts to be determined at trial;

2. Award costs and fees for this action, including attorneys' fees;

3. Grant such other and further relief as this Court deems appropriate.

Dated: August 19, 2018                    LAW OFFICE OF YOLANDA HUANG


By: __/s/ Yolanda Huang_____
　　　YOLANDA HUANG
　　　Attorneys for Plaintiff CANDACE STEEL