GREGORY B. THOMAS, ESQ. (SBN 239870)
TEMITAYO O. PETERS, ESQ. (SBN 309913)
BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation
555 12th Street, Suite 1800
Oakland, CA 94607
Telephone: (510) 834-4350
Facsimile: (510) 839-1897
gthomas@bjg.com
opeters@bjg.com

Attorneys for Defendants COUNTY OF ALAMEDA,
sued herein as "ALAMEDA COUNTY SHERIFF'S OFFICE,"
GREGORY J. AHERN, BRETT M. KETELES,
TOM MADIGAN, T. POPE, T. RUSSELL, D.
SKOLDQVIST, LT. HATTAWAY, SGT. CALAGARI,
DEPUTY DIVINE (#512), DEPUTY DEBRA
FARMANIAN, DEPUTY WEATHERBEE (#238),
DEPUTY TANIA POPE, DEPUTY WINSTEAD,
DEPUTY CAINE and DEPUTY BOCANEGRA
("ALAMEDA COUNTY DEFENDANTS")

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE STEEL, AND BABY H, a minor by and through CANDACE STEEL, <br><br> Plaintiffs, <br><br> v. <br><br> ALAMEDA COUNTY SHERIFF'S OFFICE, GREGORY J. AHERN, BRETT M. KETELES, TOM MADIGAN, T. POPE, T. RUSSELL, D. SKOLDQVIST, LT. HATTAWAY, SGT. CALAGARI, DEPUTY DIVINE (#512), DEPUTY DEBRA F ARMANIAN, DEPUTY WEATHERBEE (#238), DEPUTY TANIA POPE, DEPUTY WINSTEAD, DEPUTY CAINE, DEPUTY BOCANEGRA, ALAMEDA COUNTY and John & Jane DOEs, Nos. 1 – 50, The CALIFORNIA FORENSIC MEDICAL GROUP, a corporation; its Employees and Sub-Contractors, and Rick & Ruth ROESs Nos. 1-50, <br><br> Defendants. | Case No. 3:18-cv-05072-JD <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **DATE:** December 13, 2018 <br> **TIME:** 10:00 a.m. <br> **COURTROOM:** 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102 <br><br> First Amended Complaint filed September 23, 2018 |

///

///

- 1 -

**TO PLAINTIFFS AND THEIR ATTORNEY:**

**PLEASE TAKE NOTICE** that on December 13, 2018, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Hon. Judge James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the Alameda County Defendants will move to dismiss the first and fourth causes of action in Plaintiffs CANDACE STEEL's and BABY H's (collectively, "Plaintiffs") First Amended Complaint pursuant to Federal Rule of Civil Procedure on the following grounds:

1.     The Defendant ALAMEDA COUNTY SHERIFF'S OFFICE ("ACSO") should be dismissed because it is not a suable "person" under 42 U.S.C. § 1983 and a redundant defendant since it is a subdivision of Defendant COUNTY OF ALAMEDA ("County");

2.     Defendants GREGORY J. AHERN, BRETT M. KETELES, TOM  MADIGAN, T. RUSSELL, D. SKOLDQVIST, LT. HATTAWAY and SGT. CALAGARI ("Official Capacity Defendants")  should be dismissed because they are named in their official capacities only and are thus duplicative defendants since the County is also a named defendant;

3.     Plaintiffs' first cause of action against the "ACSO" is too vague to impose municipal liability because Plaintiffs fail to allege a specific unconstitutional County policy, custom or practice;

4.     Even if Plaintiffs' allegations could impose municipal liability, Plaintiffs' transfer to an "isolation" cell did not violate their Fourth Amendment rights as a matter of law because a transfer from one cell to another does not constitute an unreasonable seizure;

5.     Plaintiffs' third cause of action for intentional infliction of emotional distress should be dismissed as to the Alameda County Defendants because they are immune from such claims pursuant to Government Code section 845.6 and additionally as to the Official Capacity Defendants because Plaintiffs fail to allege any facts supporting such a claim against them;

6.     Plaintiffs' fourth cause of action for negligence per se against the "ACSO" fails as a matter of law because California Code of Regulations § 3355.2(b) does not provide a private right of action.

DATED:  October 30, 2018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOORNAZIAN, JENSEN & GARTHE
A Professional Corporation


By: /s/   Gregory B. Thomas
GREGORY B. THOMAS, ESQ.
TEMITAYO O. PETERS, ESQ.
Attorneys for the ALAMEDA COUNTY
DEFENDANTS

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT – CASE NO. 3:18-cv-05072-JD

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| I. | INTRODUCTION………………………………………………… | 1 |
| II. | PLAINTIFFS' FACTUAL ALLEGATIONS ……………………… | 2 |
| | A. Ms. Steel's Pre-Custody Medical Treatment at Valley Care Hospital | 2 |
| | B. Ms. Steel's Pre-Delivery Medical Treatment Through CFMG ……... | 2 |
| | C. Ms. Steel's In-Custody Delivery ………………………………… | 3 |
| | D. Plaintiffs' Causes of Action ……………………………………… | 3 |
| III. | SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES ...……….. | 3 |
| IV. | ARGUMENT ………………………………………………… | 4 |
| | A. Standard Of Review ……………………………………………… | 4 |
| | B. The ACSO and the Individual Defendants Sued Solely in their Official Capacities Should be Dismissed………………………… | 5 |
| | 1. The ACSO is Not a Suable "Person" Under Section 1983, but Rather a Subdivision of the County. Therefore, the ACSO Should be Dismissed as an Improper and Redundant Defendant………………………………………… | 5 |
| | 2. Official-Capacity Claims are Merely Another Means of Alleging a Claim Against the County. Therefore the Individual Defendants Sued in their Official Capacities Should be Dismissed as Redundant Defendants..…………… | 7 |
| | C. Plaintiffs' First Cause of Action under Section 1983 Fails as a Matter of Law because Plaintiffs' Allegations Do Not Establish Municipal Liability Under *Monell*………………………………… | 8 |
| | 1. Plaintiffs Fail to Allege that an Official County Policy Caused Their Injury………………………………… | 8 |
| | 2. Plaintiffs Fail to Allege that an Official County Custom Caused their Injury………………………………… | 11 |
| | 3. Even if Plaintiffs had Properly Alleged Municipal Liability, Ms. Steel's Alleged Transfer to an "Isolation Cell" did not Violate her Fourth Amendment Rights……………………… | 12 |

- i -

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT – CASE NO. 3:18-cv-05072-JD

| | **D.** | **Plaintiffs' Third Cause of Action for IIED Should be Dismissed Against the Alameda County Defendants because They are Entitled to Statutory Immunity……………………………………..** | 13 |
|---|---|---|---|
| | **E.** | **Plaintiffs' Fourth Cause of Action for Negligence Per Se Fails as a Matter of Law because California Code of Regulations § 3355.2(b) Does Not Provide a Private Right of Action………………………….** | 14 |
| **V.** | **CONCLUSION** ……………………………………………………… | | 15 |

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT – CASE NO. 3:18-cv-05072-JD

# TABLE OF AUTHORITIES

**Cases**                                                                                                                 **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ……………………………………………….                                                      4

*Bell v. Wolfish*, 441 U.S. 520 (1979) ……………………………………………………                                                    12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ………………………………..                                              4

*Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) ………………                                    5

*Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't*, 533 F.3d 780
(9th Cir. 2008) …………………………………………………………………………….                                                          7

*Connick v. Thompson*, 563 U.S. 51 (2011) …………………………………………….                                            8, 9,
                                                                                                                          11

*Deluca v. County of Los Angeles*, 2015 U.S. Dist. LEXIS 94354, *24 (C.D. Cal. 2015)                              6

*Foman v. Davis*, 371 U.S. 178 (1962) ……………………………………………………                                                13-15

*Goldhaber v. Higgins*, 576 F.Supp.2d 694 (W.D. Pen. 2007) …………………………                                            13

*Hartman v. Gilead Scis., Inc.*, 536 F.3d 1049 (9th Cir. 2008) …………………………                                      4, 8

*Hives v. Cnty. of Alameda*, 2015 U.S. Dist. LEXIS 112619, *4, fn. 4 (N.D. Cal. 2015)                            5

*Hurth v. Cnty. of L.A.*, 2009 U.S. Dist. LEXIS 140814, *3 (C.D. Cal. 2009) …………                                 6

*Inman v. Anderson*, 294 F.Supp.3d 907 (N.D. Cal. 2018) ……………………………..                                        10, 12,
                                                                                                                          13

*Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.*, 190 Cal.App.4th 1502
(2010) ……………………………………………………………………………………….                                                                  15

*Kentucky v. Graham*, 473 U.S. 159 (1985) ……………………………………………….                                             7

*King v. L.A. Cnty. Sheriff's Dep't*, 672 Fed.Appx. 701 (9th Cir. 2016) ………………..                                15

*Lemmons v. County of Sonoma*, 2018 U.S. Dist. LEXIS 7526, *6 (N.D. Cal. 2018) ….                                10

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ………………………………………….                                          5

*Luke v. Abbott*, 954 F.Supp. 202 (C.D. Cal. 1997) ……………………………………..                                           7

*Maldonado v. City of Ripon*, 2018 U.S. Dist. LEXIS 182713, *12-13 (E.D. Cal. 2018)                               7

*Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978) ……………                               7-8,
                                                                                                                         10, 12

*Olvera v. County of Sacramento*, 932 F.Supp.2d 1123, 1172, fn. 24 (E.D. Cal. 2013) …                             6

*Para v. Hernandez*, 2009 U.S. Dist. LEXIS 23793, *12-14 (S.D. Cal. 2009) …………..                                13

- iii -

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) …………………………….. 9-10

*Pierce v. San Mateo County Sheriff's Dep't*, 232 Cal.App.4th 995 (2014) ……………. 6

*Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) …………………………………... 12-13

*Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035 (9th Cir. 2010) …….. 5

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) …………………………………….. 8, 11

*Streit v. County of L.A.*, 236 F.3d 552 (9th Cir. 2001) …………………………… 6

*Thompson v. Los Angeles*, 885 F.2d 1439 (9th Cir. 1989) …………………………... 5

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) …………………………………… 11

*U.S. v. Kama*, 394 F.3d 1236 (9th Cir. 2005) …………………………………… 5, 6

*Vance v. Cnty. of Santa Clara*, 928 F.Supp. 993 (N.D. Cal. 1996) …………………… 5, 6

*Watson v. State of California*, 21 Cal.App.4th 836 (1985) ……………………….. 14

*Wilkinson v. Austin*, 545 U.S. 209 (2005) …………………………………………… 12

1

**Statutory Authority**

42 U.S.C. section 1983 ………………………………………………… 1, 3,5-6, 8-9, 10, 12

California Code of Regulations, title 15, section 3355.2(b) ……………………... 4, 14-15

California Government Code section 811.2 …………………………………… 6-7

California Government Code section 815.6 …………………………………… 15

California Government Code section 844 …………………………………... 14

California Government Code section 845.6 …………………………………… 14

California Government Code section 24000(b) ………………………………... 6

U.S. Const. Art. IV. …………………………………………………………... 12

DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT – CASE NO. 3:18-cv-05072-JD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3   This civil rights lawsuit arises from Plaintiff Candace Steel's ("Ms. Steel") in-custody

4   delivery of Plaintiff Baby H ("Baby H") on July 23, 2017, in an isolation cell at Santa Rita Jail

5   ("SRJ").  Plaintiffs seek to recover damages under 42 U.S.C. § 1983 ("Section 1983") for alleged

6   violations of the Fourth, Eighth and Fourteenth Amendments and various state tort claims.  The

7   First Amended Complaint ("FAC")[1] alleges in a vague and conclusory manner that Plaintiffs are

8   entitled to damages for unspecified injuries caused by the Alameda County Defendants and

9   California Forensic Medical Group ("CFMG"), a private medical contractor, as a result of the in-

10   custody birth.

11   A municipality, however, may not be held liable under Section 1983 for the allegedly

12   unconstitutional acts of its employees on a theory of respondeat superior.  *Connick v. Thompson,*

13   653 U.S. 51, 60 (2011).  Indeed, a municipality may only be held liable under Section 1983 when

14   it causes a constitutional violation through its established customs, customs or practices.  *Monell v.*

15   *Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  Here, even when construed

16   in the light most favorable to them,  Plaintiffs' allegations are insufficient to impose municipal

17   liability upon the County of Alameda ("County") as a matter of law because the FAC completely

18   fails to identify any policy, custom or practice, let alone argue that any official unconstitutional

19   policy, custom or practice, caused Plaintiffs' injuries.  As discussed in greater detail below,

20   Plaintiffs' allegations also fail to state a claim for intentional infliction of emotional distress

21   ("IIED") against the County or the official capacity defendants, fails to state a claim for a violation

22   of Fourth Amendment rights, and fails to state a claim for negligence per se as a matter of law.

23   Therefore, the Alameda County Defendants respectfully request that the Court grant this motion

24   and dismiss Plaintiffs' first cause of action for violation of federal civil rights under Section 1983

25   against the County and the official capacity defendants, third cause of action for IIED against the

26   County and the official capacity defendants and fourth causes of action for negligence per se

27   against all defendants.

28
_____
[1] Dkt. No. 10.

## II.   PLAINTIFFS' FACTUAL ALLEGATIONS

**A.   Ms. Steel's Pre-Custody Medical Treatment at Valley Care Hospital**

In late July 2017, Ms. Steel was arrested for unspecified misdemeanors and transported to SRJ.  FAC at ¶ 37.  Immediately prior to her incarceration, Plaintiffs allege that Ms. Steel was examined by Valley Care Hospital's medical staff on July 20, 2017.  *Id.* at ¶ 38.  During her examination, she allegedly informed the hospital's Labor & Delivery Department that she "had smoked methamphetamines in approximately the fifth month of pregnancy, that she smoked tobacco daily, that she had smoked marijuana within the last day, and that she drank alcohol during her pregnancy, including during the seventh or eight [sic] month or [sic] pregnancy."  *Id.* at ¶ 40.  She also allegedly informed them that she "had experienced seizures with a prior pregnancy approximately two and a half years prior and that the prior pregnancy had ended with spontaneous delivery of a baby," that she had "received no pre-natal care" and that she "did not know her actual due date.  *Id.* at ¶¶ 41-42.  Ultimately, Ms. Steel was allegedly diagnosed with a urinary tract infection and cleared for incarceration.  *Id.* at ¶¶ 38, 44-45.

**B.   Ms. Steel's Pre-Delivery Medical Treatment through CFMG**

Upon being cleared for intake by Valley Care Hospital's Labor & Delivery Department, Ms. Steel was transported to SRJ and incarcerated on July 21, 2017.  *Id.* at ¶ 45.  Plaintiffs allege that Ms. Steel's intake form noted that she "had a history of seizures, had received no pre-natal care, did not know her due date, and had been diagnosed with a urinary tract infection."  *Id.*  Later that same day, Ms. Steel allegedly informed unnamed medical staff members of CFMG, a healthcare provider that provides medical care to SRJ's inmates, that she was experiencing "uterine cramping."  *Id.* at ¶¶ 24-36; 47.  Subsequently, she allegedly began experiencing contractions, the baby was observed to be below her diaphragm and she was transported to Valley Care Hospital where she "tested positive for fetal fibronectin."  *Id.* at ¶ 50.  A few days later, on July 23, 2017, Ms. Steel allegedly "complained of cramping and pain" and was in "so much pain that she could not walk."  *Id.* at ¶¶ 51-52.  As a result, the other women in her housing unit allegedly "pressed the emergency button" to advise SRJ's control staff that Ms. Steel was "experiencing clear medical distress."  *Id.* at ¶ 53.  Ms. Steel was then examined by a CFMG nurse

- 2 -

1  who allegedly determined that she "was not dilated, was only eight months pregnant, only had a

2  stomachache, and was exaggerating her distress." *Id.* at ¶ 54.

3  **C.     Ms. Steel's In-Custody Delivery**

4       Plaintiffs next allege that "based on the CFMG nurse's statement that [Ms. Steel] was

5  complaining and exaggerating her distress," unnamed deputies placed Ms. Steel in an isolation cell

6  as "punishment."[2] *Id.* at ¶¶ 55-57.  "After many hours," Ms. Steel allegedly gave birth to Baby H

7  in the isolation cell "alone, in pain, without medical care or any other assistance from CFMG,"

8  towels, blankets or anything else. *Id.* at ¶ 60.  Although Baby H was allegedly born with the

9  umbilical cord wrapped around her neck and not breathing, Ms. Steel was allegedly able to "put

10  her fingers into Baby H's mouth to open its airways so that Baby H could start breathing." *Id.* at ¶

11  61.  It was only after unnamed deputies allegedly "heard the baby cry did they even bother to open

12  the metal door" to the isolation cell. *Id.* at ¶ 62.

13  **D.     Plaintiffs' Causes of Action**

14       Based on these allegations, Plaintiffs' First Amended Complaint ("FAC") alleges four

15  causes of action: (1) "deprivation of federal civil rights under 42 U.S.C. § 1983" and the Fourth,

16  Eighth and Fourteenth Amendments; (2) medical malpractice; (3) IIED; and (4) negligence per se.

17  *Id.* at p. 11-16.  Although Plaintiffs' FAC names the Alameda County Defendants, John & Jane

18  DOEs, Nos. 1-50, CFMG and Rick and Ruth ROES Nos. 1-50, their first and fourth causes of

19  action are solely alleged against the "ACSO" and CFMG.  Their second cause of action is solely

20  alleged against CFMG.  Lastly, their third cause of action, however, is alleged vaguely against "all

21  defendants."

22       **III.     SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES**

23       First, the ACSO is not a "person" under Section 1983, but rather a subdivision of the

24  County of Alameda ("County").  Therefore, since the County is also a named defendant to this

25

---

26  [2] While it is premature to argue factual information at the pleadings stage, for information purposes only, Ms. Steel
was temporarily relocated to an isolation cell for her own safety and security pending reassignment to a different
permanent housing location due to threats to Ms. Steel by other inmates in her housing unit who were apparently upset

27  that Ms. Steel pushed the emergency call button in their dormitory-style setting.  The isolation cell into which Ms.
Steel was temporarily relocated had its own sink and toilet.  Ms. Steel was provided with a mattress, pillow and bed

28  roll.  She was medically evaluated again in the adjacent sick call room and was medically cleared.

action, the ACSO should be dismissed as an improper and redundant defendant.  The individual defendants solely sued in their official capacities should also be dismissed as redundant defendants because official capacity actions are merely another means of alleging a claim against the County.  Second, Plaintiffs' first cause of action against the "ACSO" for various alleged constitutional violations fails as a matter of law because Plaintiffs do not allege sufficient facts, or any facts for that matter, which can be used to plausibly conclude that these violations were caused by an official County policy or custom as required to establish municipal liability.  Moreover, even if Plaintiffs had alleged sufficient facts to establish municipal liability, their first cause of action as to their claim under the Fourth Amendment must fail because Ms. Steel's transfer to an "isolation cell" immediately prior to her in-custody delivery did not result in an "unreasonable seizure."  Third, Plaintiffs' allegations fail to state a claim for IIED against the Alameda County Defendants and they are entitled to statutory immunity.  Lastly Plaintiffs' state law claim for negligence per se must fail because California Code of Regulations, title 15, section 3355.2(b) does not provide for a private right of action and even if it did, Plaintiffs do not allege that Ms. Steel was incarcerated for the seven days necessary to implicate the statute's mandatory requirements.

## IV.    ARGUMENT

### A.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted.  In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Hartman v. Gilead Scis., Inc*., 536 F.3d 1049, 1055 (9th Cir. 2008).

Although a complaint need not allege detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This requires "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Instead, a claim is facially plausible when it "allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  As such, dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citations omitted).  Leave to amend should be granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The court need not grant leave, however, when it "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Other grounds for denying leave to amend include a "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B.      The ACSO and the Individual Defendants Sued Solely in their Official Capacities should be Dismissed.**

> **1.      The ACSO is not a Suable "Person" Under Section 1983, but Rather a Subdivision of the County.  Therefore, the ACSO should be Dismissed as an Improper and Redundant Defendant.**

Plaintiffs' FAC names the ACSO and a number of its employees in their official capacities. Although it is clear that counties are "person[s]" within the meaning of Section 1983, it is unclear whether sheriff's departments, like ACSO, may be liable as separate entities under the statute for alleged civil rights violations. *See Thompson v. Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989) (recognizing that counties and municipalities are "persons" under Section 1983), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). As a result, some district courts in the Ninth Circuit cite to Justice Ferguson's concurring opinion in *Kama* or the Northern District Court of California's decision in *Vance* for the proposition that sheriff's departments are not separately suable entities under Section 1983.  *See U.S. v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (noting that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983"); *Vance v. Cnty. of Santa Clara*, 928 F.Supp. 993, 995-96 (N.D. Cal. 1996) (same).  *See, e.g., Hives v. Cnty. of Alameda*, 2015 U.S. Dist. LEXIS 112619, *4, fn. 4 (N.D. Cal. 2015) (noting in dicta that the ACSO is a "subdivision of a local government entity" and therefore not a proper

defendant for the purposes of a Section 1983 claim).  Others allow Section 1983 claims to proceed against sheriff's departments based on the Ninth Circuit's decision in *Streit v. County of L.A.*, 236 F.3d 552, 565-66 (9th Cir. 2001).  *See, e.g., Olvera v. County of Sacramento*, 932 F.Supp.2d 1123, 1172, fn. 24 (E.D. Cal. 2013) (noting the split of authority, but finding that sheriff's departments are proper defendants under Section 1983 in light of *Streit*).

In allowing a Section 1983 claim to proceed against the defendant sheriff's department, the *Streit* court did not specifically address the defendant sheriff's department's argument as to whether it is a "person[s]" within the meaning of Section 1983 and thus separately liable under Section 1983 for alleged civil rights violations.  *See generally Streit*, 236 F.3d at 556-66.  *See also Hurth v. Cnty. of L.A.*, 2009 U.S. Dist. LEXIS 140814, *3 (C.D. Cal. 2009) (acknowledging that the *Streit* court did not specifically address the argument as to whether municipal departments are persons under Section 1983").  Instead, it analyzed various sections of the California Evidence Code, before concluding that California courts would probably define the sheriff's department as a public entity under California Government Code section 811.2 and ultimately allowing the claim to proceed.  *Streit*, 236 F.3d at 565-66.

Based on the *Streit* court's failure to specifically address the question as to whether sheriff's departments are "person[s]" within the meaning of Section 1983, the Alameda County Defendants urge the court to follow the *Kama* and *Vance* line of cases and dismiss the ACSO as an improper defendant under Section 1983.  Although California courts still have not "explicitly determined whether a sheriff's department is a public entity under [California Government Code section 811.2]," recent case law seems to suggest that California courts do not view sheriff's departments as separate governmental entities, but rather as departments of their respective counties.  *Deluca v. County of Los Angeles*, 2015 U.S. Dist. LEXIS 94354, *24 (C.D. Cal. 2015). *See* Cal. Gov. Code § 24000(b) (listing the sheriff as one of several enumerated "county officers"); *Pierce v. San Mateo County Sheriff's Dep't*, 232 Cal.App.4th 995, 1001, fn. 1 (2014).

Even if the Court were to determine that the ACSO is a "person" within the meaning of Section 1983, allowing Plaintiffs' claims to proceed against both the County and ACSO is duplicative and unnecessary.  For example, while Plaintiffs vaguely define the ACSO as a public

1   entity under California Government Code section 811.2,[3] they do not define the County or

2   reference the County as a separate entity anywhere in their factual allegations or reference it in

3   their causes of action.   FAC at ¶¶ 9, 18-100.  Indeed, apart from mentioning the County in the

4   caption, Plaintiffs do not make an effort to allege any distinct claims against the County.  In light

5   of the lack of meaningful distinction between Plaintiffs' allegations against ACSO and the County,

6   Plaintiffs' attempt to assert separate claims against both entities is redundant and unnecessary.

7   *See, e.g. Maldonado v. City of Ripon*, 2018 U.S. Dist. LEXIS 182713, *12-13 (E.D. Cal. 2018).

8   Therefore, since California statutory and case law supports finding that the ACSO is merely a

9   subdivision of the County, the Alameda County Defendants respectfully requests that the ACSO

10  be dismissed from this action with prejudice.

11          **2.     Official-Capacity Claims are Merely Another Means of Alleging a Claim
                     Against the County.  Therefore the Individual Defendants Sued in Their
12                   Official Capacities Should be Dismissed as Redundant Defendants.**

13          Similarly, Plaintiffs' FAC names Gregory J. Ahern, Brett M. Keteles, Tom Madigan, T.

14  Russell, D. Skoldqvist, Lt. Hattaway and Sgt. Calagari as defendants ("Official Capacity

15  Defendants"), in their official capacities only, in addition to naming the County.  The Supreme

16  Court has held, however, that "[o]fficial capacity suits are generally another way of pleading an

17  action against an entity of which the officer is an agent." *Luke v. Abbott*, 954 F.Supp. 202, 203

18  (C.D. Cal. 1997) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, fn. 55 (1978)).

19  "For this reason, when both an officer and the local government entity are named in a lawsuit and

20  the officer is named in official capacity only, the officer is a redundant defendant and may be

21  dismissed." *Luke*, 954 F.Supp. at 203.  *See also Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles

22  County Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (citing *Kentucky v. Graham*, 473 U.S. 159,

23  165-66 (1985).  As a result, official capacity actions still require a plaintiff to fulfill *Monell*'s

24  requirements by establishing that the "entity itself is a 'moving force' behind the deprivation."

25  *Kentucky*, 473 U.S. at 166-68.

26          Here, Plaintiffs do not name the Official Capacity Defendants in their individual capacities;

27  _____

28  [3] As noted above, California courts do not appear to have not specifically ruled as to whether sheriff's departments, like the ACSO, qualify as public entities under Government Code section 811.2.  As a result, the Alameda County Defendants dispute Plaintiffs' attempts to classify the ACSO as a separate, independent legal entity from the County.

- 7 -

only in their official capacities. FAC at ¶¶ 10-15.  Plaintiffs also do not allege that any of the Official Capacity Defendants were personally involved in the constitutional violations they allegedly endured or sufficient facts to establish that any of these defendants engaged in any form of wrongful conduct that was casually connected to the constitutional deprivations they allegedly endured on this date.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (outlining the requirements for supervisory liability).  Instead, Plaintiffs only vaguely allege that each of the Official Capacity Defendants, in light of their leadership positions at SRJ, "caused, created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions, actions, policies, customs and practices that prevail at [SRJ], as described fully below."  *See* FAC at ¶¶ 10-14.  These vague, unsupported conclusory allegations do not "allow[s] the court to draw the reasonable inference that [the Official Capacity Defendants are] liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  As a result, this Court need not accept them as true for the purposes of determining this motion.  *Hartman*, 536 F.3d at 1055. Moreover, since the County is also a named defendant and official capacity claims are merely another means of bring a suit against the County, the Official Capacity Defendants are unnecessary and redundant defendants.  *Monell*, 436 U.S. at 690, fn. 55.  Therefore, the Alameda County Defendants respectfully request that the Court dismiss the Official Capacity Defendants from this action with prejudice.

**C.** **Plaintiffs' First Cause of Action under Section 1983 Fails as a Matter of Law Because Plaintiffs' Allegations Do Not Establish Municipal Liability Under *Monell*.**

Plaintiffs' first cause of action alleging violations of their Fourth, Eighth and Fourteenth Amendments is alleged solely against "ACSO" and CFMG.  Before reaching the merits of Plaintiffs' allegations under this cause of action, the Court must determine whether Plaintiffs have pled sufficient facts to impose municipal liability upon the County.  *See, e.g., Iqbal*, 556 U.S. at 675-77; *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citing *Monell*, 436 U.S. at 691).

**1.** **Plaintiffs Fail to Allege that an Official County Policy Caused their Injury.**

Since municipalities and local governments "are not vicariously liable under Section 1983 for their employees' actions . . . Plaintiffs who seek to impose liability on local governments under

1   Section 1983 must prove that 'action pursuant to official municipal policy' or custom caused their

2   injury." *Connick*, 563 U.S. at 60 (2011) (citations omitted).   This requirement is intended to

3   "distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make

4   clear that municipal liability is limited to action for which the municipality is actually responsible."

5   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) [emphasis in the original].   Thus,

6   municipal liability may only be imposed when an "official municipal policy," which "includes the

7   decisions of a government's lawmakers, the acts of its policymaking officials, and practices so

8   persistent and widespread as to practically have the force of law," causes an injury.   *Connick*, 563

9   U.S. 51 at 61.  *See also Pembaur*, 475 U.S. at 480-81.

10      A close examination of the Supreme Court's decision in *Pembaur* is useful for illustrating

11   why Plaintiffs' allegations do not give rise to municipal liability.   In *Pembaur*, deputy sheriffs

12   employed by the defendant county were dispatched to serve capiases on several people employed

13   by the plaintiff.  *Id.* at 472.  When the plaintiff refused to grant access to the private area of his

14   business to serve the capiases, the deputy sheriffs were advised by the county prosecutor, based on

15   his understanding of the law, to "go in and get the witnesses."  *Id.* at 484.  After the Sixth Circuit

16   affirmed the district court's dismissal of the Section 1983 claims against the defendant county

17   because it determined that the plaintiff had failed to prove that this single decision established the

18   existence of an official county policy, the plaintiff appealed to the Supreme Court.  *Id.* at 475-76.

19   In analyzing the lower court's decision, the Supreme Court held that "municipal liability under

20   Section 1983 attaches where – and only where – a deliberate choice to follow a course of action is

21   made from among various alternatives by the official or officials responsible for establishing final

22   policy with respect to the subject matter in question."  *Id.* at 483.  Ultimately, based on this

23   holding, the Supreme Court determined that the county prosecutor was a policymaker for the

24   defendant county and that his single, "considered decision" directing the deputy sheriffs to conduct

25   a warrantless search was sufficient to establish a county policy, thus establishing municipal

26   liability.  *Id.* at 484-85.

27      Similar to *Pembaur*, Plaintiffs do not allege that a specific County policy caused them to

28   suffer the specific constitutional violations that they allege here.  Instead, they allege a series of

alleged decisions made by unnamed Valley Care Hospital employees, CFMG employees and ACSO-employed deputy sheriffs over a three-day span in an apparent attempt to establish the existence of a County or CFMG policy.   *See generally* FAC at 10 ¶¶ 37-62.  However, unlike in *Pembaur*, Plaintiffs never allege, and indeed cannot allege, that any of these non-County employees or low-ranking deputy sheriffs are policymakers with the power to make County policy based on their individual or collective decisions.  *Cf. Pembaur*, 475 U.S. at  480-84.  Further, unlike in *Pembaur*, Plaintiffs never allege that any policymaker for the County had anything to do with the decisions that were made during this three-day timeframe or otherwise made a "considered decision" that led to the treatment they received at SRJ.[4]  *Cf. Id.* at 484-85.

For example, nowhere in Plaintiffs FAC do they specifically allege that a policymaker for the County made a "deliberate choice" that Ms. Steel should be transferred to an "isolation cell as punishment" for "exaggerating her distress."  *Cf. Id.* at 485.  Nor do they specifically allege that a policymaker for the County made a "deliberate choice" that Ms. Steel should be "placed in an isolation cell without medical care and left to deliver a baby on her own."  *Id.*; FAC at ¶ 75.  As a result, Plaintiffs' allegations are nothing more than an improper attempt to impose respondeat superior liability upon the County for the conduct of others.  *Cf. Id.* at 462 (highlighting that *Monell* is based on the Supreme Court's evaluation of the legislative history of Section 1983 and Congress' decision not to impose civil liability upon municipalities for the conduct of others).

Finally, the only policies identified at all in the FAC are CFMG policies.  See FAC at ¶¶ 95-100.  With regard to the provision of medical care, CFMG policies effectively become the policies of ACSO.  *Lemmons v. County of Sonoma*, 2018 U.S. Dist. LEXIS 7526, *6 (N.D. Cal. 2018).  However, Plaintiffs do not allege that these policies are deficient or that the policies themselves are "a moving force" behind the constitutional violations they allegedly endured.  *Inman v. Anderson*, 294 F.Supp.3d 907, 920 (N.D. Cal. 2018).  Instead, Plaintiffs simply allege

---

[4] The only potential policymaker that Plaintiffs make any detailed reference to in their FAC is Sheriff Ahern.  *See generally* FAC at ¶¶ 18-36.  Plaintiffs appear to allege that Sheriff Ahern has the authority to oversee salary increases at SRJ, they fail to specifically allege how this alleged authority has anything to do with the constitutional violations they allegedly endured.  *See, e.g. Iqbal*, 556 U.S. at 678 (holding that in order to survive the "plausibility standard" on motion to dismiss, a complaint must allege "more than a sheer possibility" that a defendant is liable for the alleged misconduct).

that these policies were not followed.  Since Plaintiffs fail identify any policy and the County

cannot be held vicariously liable for its employees' actions – or for the actions of non-employees

for that matter -- Plaintiffs' vague and conclusory allegations are insufficient to establish the

existence of a County policy as required to impose municipal liability.

> **2.      Plaintiffs Fail to Allege that an Official County Custom  Caused their Injury.**

Plaintiffs may also attempt to impose liability upon the County by alleging the existence of

an official County custom.  *Connick*, 563 U.S. 51 at 60.  However, "[c]onsistent with the

commonly understood meaning of custom, proof of random acts or isolated events are insufficient

to establish custom.  Only if a plaintiff shows that his injury resulted from a permanent and well-

settled practice may liability attach for injury resulting from a local government custom."

*Thompson*, 885 F.2d at1444.  *See also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiffs argue that the health care services contract between the ACSO and CFMG

creates a financial incentive to withhold inpatient hospitalization services for all inmates, including

inmates in active labor. FAC at ¶¶ 33.  Although unclear, it appears that Plaintiffs are attempting to

use this contract to establish the existence of a custom of "refus[ing] and withhold[ing] inpatient

hospital care to inmates in active labor."  *Id.* at ¶ 34.  If this is indeed their intent, such an argument

is contradicted by Plaintiffs' own judicial admission that Ms. Steel was taken to the hospital on

July 20, 2017 and July 21, 2017. *Id.* at ¶¶ 38-49.  *But see Starr*, 652 F.2d at 1216 (holding that in

order for an allegation to be "entitled to the presumption of truth . . . [it] must contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

effectively").  Moreover, Plaintiffs also fail to allege any facts that could be used to establish that

the County maintains a widespread, permanent or well-settled custom of subjecting female inmates

the specific alleged constitutional violations that they allege here.  For example, Plaintiffs do not

allege any non-conclusory, non-speculative facts to support an allegation that "inmates in active

labor" are persistently and frequently being denied "inpatient hospitalization services" in such a

widespread and consistent manner that their alleged denial of "inpatient hospitalization services"

could be said to be representative of a well-settled practice or custom.  As a result, Plaintiffs'

allegations of their isolated experience of allegedly being denied "inpatient hospitalization

1   services" is insufficient to impose municipal liability upon the County.

2          Ultimately, when a complaint, such as Plaintiffs' FAC, "pleads facts that are merely

3   consistent with a defendant's liability, it stops short of the line between possibility and plausibility

4   of entitlement to relief." *Iqbal*, 556 U.S. at 678.  Thus, since none of the individual deputies who

5   committed the alleged constitutional deprivations were officials with "final policy-making

6   authority" and Plaintiffs do not allege sufficient facts to establish that an applicable County custom

7   or practice directly caused the constitutional violations they allege here, municipal liability is

8   improper.  *Compare Inman*, 294 F.Supp.3d at 920-22 (dismissing a plaintiffs' claims against a

9   County in light of the plaintiffs' failure to establish municipal liability under *Monell*).  Therefore,

10  the Alameda County Defendants respectfully request that the County be dismissed from Plaintiffs'

11  first cause of action.

12          **3.      Even if Plaintiffs had Properly Alleged Municipal Liability, Ms. Steel's Alleged**
            **Transfer to an "Isolation Cell" did not Violate her Fourth Amendment Rights.**

13

14          With regard to Plaintiffs' unlawful seizure claim under Section 1983, the Fourth

15  Amendment grants the right to be free from unreasonable search and seizure.  U.S. Const. Art. IV.

16  The Supreme Court has stated, however, that "simply because prison inmates retain certain

17  constitutional rights does not mean that these rights are not subject to restrictions and limitations."

18  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).  Although the extent to which an inmate's Fourth

19  Amendment rights can be curtailed is unclear, the Supreme Court has held in the context of a due

20  process claim that "the Constitution itself does not give rise to a liberty interest in avoiding transfer

21  to more adverse conditions of confinement."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

22  Moreover, the Ninth Circuit has previously held that a prisoner-plaintiff's claim that a prison

23  transfer would violate his "fourth amendment and equal protection rights has no basis in law,"

24  even when "the degree of confinement may be different and prison life may be more disagree in

25  one institution than in another."   *Rizzo v. Dawson*, 778 F.2d 527, 530-31 (9th Cir. 1985).

26          Here, Plaintiffs do not allege that Ms. Steel was unlawfully seized when she was originally

27  arrested.  FAC at ¶ 37 (acknowledging that Ms. Steel was "arrested on misdemeanors").  Instead, it

28  appears that Plaintiffs' fourth amendment claim is based on Ms. Steel's alleged placement (and

Baby H's alleged default transfer) in an "isolation cell" prior to her in-custody deliver of Baby H. *See* FAC at ¶ 76.  Since the situation that gave rise to Plaintiffs' allege Fourth Amendment claim did not arise until after Ms. Steel was already lawfully incarcerated, Plaintiffs' unlawful seizure claim fails as a matter of law under *Rizzo*.  *See also, e.g., Para v. Hernandez*, 2009 U.S. Dist. LEXIS 23793, *12-14 (S.D. Cal. 2009) (dismissing a prisoner-plaintiff's fourth amendment claim based on his transfer from one unit to another); *Goldhaber v. Higgins*, 576 F.Supp.2d 694, 717-718 (W.D. Pen. 2007) (citing a long line of cases supporting the proposition that prisoners' Fourth Amendment rights are curtailed before determining that the inmate-plaintiff's transfer from one jail to another did not result in a constitutional violation).  Since no additional allegations can remedy this deficiency, granting Plaintiffs leave to amend this claim would be futile.  *Foman*, 371 U.S. at 182.  Therefore, Defendants respectfully request that Plaintiffs' Fourth Amendment claim be dismissed with prejudice.

**D.    Plaintiffs' Third Cause of Action for IIED should be Dismissed Against the Alameda County Defendants because they are Entitled to Statutory Immunity.**

Plaintiffs third of action for intentional infliction of emotional distress ("IIED") is vaguely "alleged against all defendants."  As alleged against the County, the ACSO and the Official Capacity Defendants, this claim must be dismissed because Plaintiffs do not allege any facts that directly tie any of these defendants' conduct to the injuries alleged here.  *See Inman*, 294 F.Supp.3d at 919 (noting that a complaint that "lumps together multiple defendants in one broad allegation fails to satisfy" the requirements of Federal Rule Civil Procedure 8(a)(2)).  Second, although the basis of Plaintiffs' claim is unclear, when all of the non-conclusory allegations are construed in the light most favorable to the plaintiffs, it appears that the gravamen of their IIED claim, as alleged against the Alameda County Defendants, is premised upon an alleged failure to furnish medical care. *See, e.g.* FAC at ¶ 90 ("Plaintiff Steel was in the throes of childbirth, in an isolation cell at the Santa Rita Jail –without any medical care – and by ignoring screams and pleas for help").

Here, however, there is no dispute that medical attention was summoned for Ms. Steel on multiple occasions from July 20, 2017 up until she gave birth on July 23, 2017.  FAC at ¶¶ 37-54.

Indeed, Ms. Steel was taken to the hospital for medical clearance before she was taken into custody at SRJ.  *Id.* at ¶ 38.  Then, CFMG medical staff saw Ms. Steel multiple times on July 21, 2017, including during the intake process and she was transferred to Valley Care Hospital for a second time on this date and was provided with further medical care.  *Id.* at ¶ 49.  On July 23, 2017, the day she gave birth, Ms. Steel was again seen by CFMG medical staff who "announced that [she] was not dilated, was only eight months pregnant, only had a stomachache, and was exaggerating her distress." *Id. at* ¶ 54.  Given Plaintiffs' allegations concerning the unnamed deputy sheriffs' history of summoning medical assistance for Ms. Steel and the CFMG nurse who saw Ms. Steel on the day of her in-custody delivery and cleared her to be returned to housing, it is clear that there is no factual basis for Plaintiffs' IIED claim as currently pled, particularly since public entities and public employees are entitled to statutory immunity for failure to furnish or obtain medical care for a prisoner[5] in custody under California law.  Government Code, § 845.6. *See also Watson v. State of California*, 21 Cal.App.4th 836, 842 (1993) (holding that a County is not liable for medical malpractice under Government Code section 845.6 and that the section did not require the prison guards to be better medical diagnosticians than medical staff).  Therefore, the Alameda County Defendants are immune from suit as a matter of law as to Plaintiffs' IIED claim and should be dismissed with prejudice from this cause of action.  *Foman*, 371 U.S. at 182.

**E.     Plaintiffs' Fourth Cause of Action for Negligence Per Se Fails as a Matter of Law because California Code of Regulations § 3355.2(b) does Not Provide a Private Right of Action.**

Lastly, Plaintiffs' final cause of action seeks to impose negligence per se liability upon the "ACSO[6]" and CFMG for violating California Code of Regulations, title 15, section 3355.2(b) ("Section 3355.2").  Section 3355.2 states that "[c]onfirmed pregnant inmates, within seven days of arrival at the institution, will be scheduled for an obstetrics (OB) examination by an Obstetrical Physician or Obstetrical Nurse Practitioner (NP) wherein:  (1) [a] term of pregnancy and a plan of care be determined. [and] (2) [d]iagnostic studies will be ordered, if needed."  Although the Alameda County Defendants acknowledge that public entities may be "liable for an injury of that

---

[5] Government Code section 844 defines "prisoner" to include pre-trial detainees held at jails.

[6] Again, in light of the arguments above, the Alameda County Defendants refer to the County instead of the ACSO throughout the remainder of this section.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT – CASE NO. 3:18-cv-05072-JD

kind proximately caused by its failure to discharge a [mandatory] duty, Plaintiffs' fourth cause of action fails for two reasons.  Cal. Gov. Code § 815.6.

First, Title 15 does not provide Plaintiffs with a private right of action to enforce Section 3355.2.  *King v. L.A. Cnty. Sheriff's Dep't*, 672 Fed.Appx. 701, 702 (9th Cir. 2016).  Thus, even if the County did violate Section 3355.2, which it did not, Plaintiffs do not have standing to assert this claim as a matter of law and it must be dismissed with prejudice.  *Foman*, 371 U.S. at 182.  Second, even if Plaintiffs did have standing to assert this claim, under California law, negligence per se results when:  "(1) the defendant violated a statute; (2) the violation proximately caused the plaintiff's injury; (3) the injury resulted from the kind of occurrence the statue was designed to prevent; and (4) the plaintiff was one of the class of persons the statute was intended to protect."  *Jacobs Farm/Del Cabo, Inc. v. Western Farm Service, Inc.*, 190 Cal.App.4th 1502, 1526 (2010).

Here, Plaintiffs allege that Ms. Steel was not provided "the benefit of a treatment and care plan regimen provided by a responsible physician or qualified specialist[, which] was the proximate cause of Plaintiffs' injury."  FAC at ¶ 98.  As Plaintiffs acknowledge, the County hired CFMG to provide medical care to inmates at SRJ.  Since medical care is provided by CFMG employees, not County employees, the County cannot be held liable for the torts allegedly caused by CFMG's employees on a respondeat superior basis.  Moreover, even if the County could be held liable for CFMG's employees' tortious conduct, this cause of action fails because Plaintiffs do not allege that Ms. Steel was detained at Santa Rita Jail ("SRJ") for at least seven days and that she was not scheduled for an "obstetrics (OB) examination by an Obstetrical Physician or Obstetrical Nurse Practitioner (NP)" by the end of the seventh day of her detention.  Instead, they merely allege that Ms. Steel arrived at "Santa Rita Jail shortly after midnight" on July 21, 2017 and gave birth to Plaintiff Baby H two days later, on July 23, 2017.  FAC at ¶¶ 37, 51-62.  Ultimately, since it appears that Plaintiffs will not be able to resolve the pleading deficiencies in their fourth cause of action, it fails as a matter of law and should be dismissed with prejudice.  *Foman*, 371 U.S. at 182.

## V.     CONCLUSION

Therefore, for all these reasons, the Alameda County Defendants respectfully request that this motion be granted in full.

1   DATED:  October 30, 2018

2                                        BOORNAZIAN, JENSEN & GARTHE
                                         A Professional Corporation

3

4                                        By: /s/   Gregory B. Thomas
                                             GREGORY B. THOMAS, ESQ.
5                                            TEMITAYO O. PETERS, ESQ.
                                         Attorneys for the ALAMEDA COUNTY
6                                                    DEFENDANTS
    28228\789817

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT – CASE NO. 3:18-cv-05072-JD