UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE STEEL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et al.,<br><br>Defendants. | Case No. 3:18-cv-05072-JD<br><br>**ORDER RE MOTION TO DISMISS**<br>Re: Dkt. No. 14 |

As alleged in the first amended complaint ("FAC"), Candace Steel was left alone in a jail cell to give birth to her child, Baby H, while in the pretrial custody of the Alameda County Sheriff's Office. Dkt. No. 10. Steel was not given any assistance or care during the delivery. Baby H was born with the umbilical cord wrapped around her neck, and Steel had to stick her fingers into Baby H's mouth to start respiration. Sheriff's deputies went into Steel's cell only after they heard Baby H cry.

Steel and Baby H are the plaintiffs in this civil rights action. Defendants are the Sheriff's Office, certain individuals, the California Forensic Medical Group ("CFMG"), which is under contract with Alameda County to provide medical services at the jail, and the County itself. CFMG answered the complaint and is not a party to the pending motion. Dkt. No. 17.

The Alameda County defendants have challenged the sufficiency of the allegations in the FAC under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 14. Their main argument is that the FAC does not plausibly allege that plaintiffs' injuries were the result of a government pattern, practice, or custom under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). It requires "a plaintiff seeking to impose liability on a municipality under [Section] 1983 to identify

a municipal 'policy' or 'custom' that caused the plaintiff's injury" to "ensure[] that a municipality is held liable only for those deprivations . . . [that] may fairly be said to be" its own. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citations omitted).

These standards are amply satisfied here as a pleading matter. Plaintiffs allege that their injuries arose out of the Sheriff's Office's contract with CFMG, which contained financial terms that discouraged adequate medical care, including procedures such as labor and delivery, for detainees. These allegations are sufficiently specific and concrete to plausibly state a policy or practice under *Monell*.

The outcome is different for the California state law claims of intentional infliction of emotional distress ("IIED") and negligence per se. These claims are not adequately supported by the facts and applicable law, and are dismissed with leave to amend.

## BACKGROUND

Taking the FAC's nonconclusory allegations as true for the motion to dismiss, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), the salient facts are straightforward. Steel was arrested on misdemeanor charges by local police officers, and jailed at the Santa Rita facility in July 2017. Dkt. No. 10 ¶ 37. The charges were subsequently dismissed.

At the time of arrest, Steel was visibly pregnant. Before going to the jail, the police officers took her to a hospital "for the purpose of medical clearance." *Id.* ¶ 38. Steel told the attending hospital staff that she had used controlled substances during the pregnancy, had not received any prenatal care, and did not know her due date. *Id.* ¶¶ 40, 42. She also said that she had had seizures and a spontaneous delivery in a previous pregnancy. *Id.* ¶ 41. Doctors evaluated Steel as at least 8 months pregnant and suffering from a urinary tract infection ("UTI"), which the FAC alleges is a condition associated with early delivery. *Id.* ¶¶ 39, 43-44.

Steel was surrendered to the Sheriff's Office and booked into Santa Rita Jail shortly after midnight on July 21, 2017. *Id.* ¶ 37. The jail intake form noted the medical information from the hospital -- Steel's overall condition, lack of prenatal care, recent substance use, history of pregnancy-related seizures, UTI diagnosis, and the fact that she was not sure about her due date. *Id.* ¶ 45. Later in her first day at the jail, Steel reported painful uterine cramping and contractions

to the jail's medical staff from CFMG. *Id.* ¶¶ 47-48. She was taken back to the hospital, where she tested positive for fetal fibronectin, which the FAC alleges is also associated with preterm delivery, like the UTI. *Id.* ¶¶ 49-50.

Steel went into labor on July 23, 2017, approximately 60 hours after she arrived at the jail. She told jail personnel that she was experiencing severe cramping and pain, and could not stand or walk, but only crawl on hands and knees. *Id.* ¶¶ 51-52. Other inmates who saw Steel's distress told the jailers that there was a medical emergency. *Id.* ¶ 53. A CFMG nurse examined Steel, and concluded that her cervix was not dilated and that she was experiencing nothing but a stomach ache. *Id.* ¶ 54. The FAC alleges that the nurse also said Steel was exaggerating her distress. *Id.* After hearing the nurse's report, sheriff's deputies removed Steel to an isolation cell. *Id.* ¶ 55.

Steel went into labor and delivery in the isolation cell. She alleges that she spent hours screaming in pain, alone and unattended, before giving birth to Baby H. *Id.* ¶¶ 57-58. In addition to the obvious physical travails from giving birth without any modern palliatives or a physician's care, Steel was distraught and terrified that she and her child could die in the cell. *Id.* ¶ 59.

Baby H was born with the umbilical cord around her neck. *Id.* ¶ 61. Steel noticed Baby H was not breathing and stuck her fingers in Baby's H mouth to try to stimulate respiration. *Id.* Only when deputies heard Baby H crying did they enter Steel's cell to attend to the mother and newborn child. *Id.* ¶ 62.

The FAC states that Alameda County had outsourced medical care of detainees at Santa Rita jail to CFMG. *Id.* ¶¶ 24-36. Plaintiffs allege that the contract with CFMG made it liable for all costs associated with hospital stays and services, without any compensation from Alameda County. *Id.* ¶¶ 25-28. They contend this arrangement created "a financial incentive and imperative for CFMG to refuse and withhold inpatient hospitalization services to all inmates, including inmates in active labor." *Id.* ¶ 33.

**DISCUSSION**

**I.      LEGAL STANDARDS**

The pleading requirements in Rule 8, as construed in *Twombly* and *Iqbal*, apply to Section 1983 claims against local government entities. *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d

631, 636-37 (9th Cir. 2012). Under these familiar standards, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), including "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

To hold local entities like the Sheriff's Office or Alameda County liable under Section 1983, plaintiffs must plausibly allege that "the challenged conditions were part of a policy, custom or practice officially adopted by [those] defendants." *Upshaw v. Alameda Cty.*, 377 F. Supp. 3d 1027, 1032 (N.D. Cal. 2019) (citing *Monell*, 436 U.S. at 690). Specifically, they must "identify a custom or policy, attributable to the" government entity "that caused [their] injury," and "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of [the jail's] inhabitants." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1076 (9th Cir. 2016) (en banc) (internal quotation and citation omitted) (alteration in original). Deliberate indifference is "an objective inquiry." *Id.*

Steel's Section 1983 claims arise under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's prohibition on cruel and unusual punishment. That is so because Steel was a pretrial detainee at the time of the alleged misconduct and had not been convicted of an offense. *See Upshaw*, 377 F. Supp. 3d at 1031; *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *Castro*, 833 F.3d at 1067. To state a claim for inadequate medical care as a pretrial detainee, Steel must plead facts showing that:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct

4

> obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). An objective standard again governs here, which requires proof of "more than negligence but less than subjective intent -- something akin to reckless disregard." *Id.* (citations omitted).

The parties do not dispute that the same Fourteenth Amendment standards should guide the evaluation of Baby H's federal civil rights claims. Baby H was not, of course, a pretrial detainee when she entered the world in the isolation cell. But she was certainly in the custody of the Alameda County Sheriff's Office. Consequently, although the parties did not brief this issue in any detail, the Court concludes that the same legal standards apply to mother and baby under Section 1983 because their claims are based on the same constitutional protections. *See Castro*, 833 F.3d at 1069-70 (applying *Kingsley's* standards for excessive-force claims to failure-to-protect claims because the "underlying federal right, as well as the nature of the harm suffered, is the same" in that both "categories of claims arise under the Fourteenth Amendment's Due Process Clause"); *Gordon*, 888 F.3d at 1122-25 (applying *Castro* to serious-medical-need claims).

As the Court has observed in another case against the Alameda County Sheriff's Office, there is no doubt that jailers are entitled to a good measure of deference in determining the policies and practices best suited to keep their facilities secure and safe. *Upshaw*, 377 F. Supp. 3d at 1031. But this deference is generally not afforded in "medical care cases" because the "refusal or failure to provide such care . . . typically do[es] not relate to security or discipline." *Chess v. Dovey*, 790 F.3d 961, 973 (9th Cir. 2015). The Alameda County defendants do not dispute this proposition for the motion to dismiss. *See* Dkt. No. 14 at 3 n.2.

Plaintiffs' tort claims for intentional infliction of emotional distress require: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). Negligence per se creates a rebuttable presumption of a failure to exercise due care when a person:

> (1) . . . violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

Cal. Evid. Code § 669.

## II. THE FAC PLAUSIBLY ALLEGES A SECTION 1983 CLAIM

### A. The Sheriff's Office Is A Proper Defendant

The first challenge to plaintiffs' civil rights counts goes to who is an appropriate defendant. Alameda County itself is subject to a Section 1983 claim, and defendants do not suggest otherwise. *See Rivera v. Cty. of L.A.*, 745 F.3d 384, 389 (9th Cir. 2014). They say, however, that the list of named defendants should largely stop there, and that the Sheriff's Office is not a proper defendant.

The point is not well taken. Our circuit has typically treated sheriff's departments identically to counties under Section 1983. Many cases, including *Streit v. County of Los Angeles*, 236 F.3d 552 (9th Cir. 2001), which the parties discuss at length in their briefing, have allowed a Section 1983 suit to proceed against a sheriff's department and its county. The Alameda County defendants say *Streit* should be disregarded because it did not expressly address whether a sheriff's office is a "person" under Section 1983. That is a questionable proposition in light of the factual posture of that case, but even if defendants are given every benefit of the doubt in their reading of *Streit*, they overlook other cases that weigh strongly against their position. For example, *Rivera v. County of Los Angeles* begins with the proposition that "municipalities, including counties and their sheriff's departments, can . . . be liable under [Section] 1983 if" the requirements for *Monell* liability are met. *Rivera*, 745 F.3d at 389. If an entity is subject to *Monell* liability, it is a "person" under Section 1983. *See Monell*, 436 U.S. at 690-691; *see also Jackson v. Barnes*, 749 F.3d 755, 764 & n.4 (9th Cir. 2014) (reviewing cases where county sheriff's department sued under Section 1983 as jail administrator).

The suggestion that the Sheriff's Office should be dismissed because it is a redundant defendant is also unavailing. Even though the County is also a party to the suit, the Sheriff's

6

1  Office is the only Alameda County defendant against whom plaintiffs have brought their Section

2  1983 claims. Moreover, while the Court "may dismiss" redundant defendants, it is not required to

3  do so. *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cty. Sheriff's Dep't*, 533 F.3d 780, 799 (9th Cir.

4  2008).

### B. Plaintiffs Have Adequately Alleged A Government Policy, Custom, Or Practice

Defendants' main attack on the civil rights claims is that the FAC does not plead enough facts to plausibly allege that plaintiffs were injured by a government practice or program. In effect, defendants suggest that plaintiffs complain of a one-time incident for which Alameda County and the Sheriff's Office are not responsible. *See Garmon v. Cty. of L.A.*, 828 F.3d 837, 845-46 (9th Cir. 2016).

It is true that alleging a single instance of constitutionally suspect conduct may not be enough to state a Section 1983 claim. *See Doe v. Cty. of Sonoma*, Case No. 16-cv-005195-JD, 2019 WL 4472422, at *2 (N.D. Cal. Sept. 18, 2019). But plaintiffs do more than just describe one catastrophic event. They allege that the contract between the Sheriff's Office and CFMG established a de facto policy and practice of denying hospital care and other potentially costly procedures to detainees.

This satisfies *Monell*. In *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985), the Supreme Court described an actionable *Monell* policy as "a course of action consciously chosen among various alternatives." The decision by Alameda County to outsource the medical care of detainees under a contract with CFMG was exactly that. The FAC states that jailers in San Francisco and Contra Costa counties use alternative providers -- namely their county departments of public health -- to provide health care within jails. Dkt. No. 10 ¶¶ 35-36. The Alameda County Sheriff's Office consciously chose a different approach. It is also readily inferable that the Office could have drafted its contract with CFMG, or another provider, in any number of ways to balance financial considerations with adequate medical care for pregnant women in labor. Defendants do not say anything to the contrary, and do not dispute that the contract is properly understood as an official act, Dkt. Nos. 14 at 11; 16 at 3 n.4, or that it was entered into by the Alameda County

Sheriff's Office as plaintiffs allege, Dkt. No. 10 ¶¶ 24-36. Consequently, the contract "may fairly be said to represent official policy." *King v. Cty. of L.A.*, 885 F.3d 548, 558 (9th Cir. 2018) (citation omitted).

Plaintiffs have also adequately alleged that this "official policy" was "the moving force of the constitutional violation." *Monell*, 436 U.S. at 694-95. The Sheriff's Office's contract with CFMG "specifies that CFMG itself is solely responsible for all costs incurred in connection with any health care services provided to inmates outside the jail and that CFMG is not entitled to and will not receive any reimbursement from [the Sheriff's Office] for the cost of services provided to inmates by hospitals or by any non-CFMG personnel." Dkt. No. 10 ¶ 25. "If an inmate receives inpatient hospitalization services, CFMG must pay the total cost of the medical care provided, regardless of the level of cost incurred." *Id.* ¶ 26 (internal quotation omitted). Inpatient hospitalization includes "labor and delivery services." *Id.* ¶ 27.

Taken as a whole, these factual allegations amply support the FAC's claims that there was "a financial incentive and imperative for CFMG to refuse and withhold inpatient hospitalization services to all inmates, including inmates in active labor." *Id.* ¶ 33. Plaintiffs also expressly allege that the "denial of necessary and appropriate medical services" to them " was imposed in order to reduce CFMG's costs under its contract with" the Sheriff's Office. *Id.* ¶ 73.

Consequently, the FAC plausibly alleges that a government practice or policy caused their injuries. Defendants try to avert this conclusion by saying that Steel was taken to the hospital on two occasions after being arrested, including once after arriving at Santa Rita Jail. But the fact that they provided a modicum of care does not vitiate plaintiffs' claims. *See Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (en banc) (noting a plaintiff "need not prove that he was completely denied medical care" to assert a constitutional claim). The critical point is that plaintiffs did not receive adequate care at the time they needed it most.

### C. Plaintiffs Have Adequately Alleged Deliberate Indifference

Plaintiffs have also sufficiently pleaded that the policy manifested deliberate indifference to their constitutional rights. "It is not sufficient for a plaintiff to identify a custom or policy, attributable to the municipality, that caused his injury. A plaintiff must also demonstrate that the

8

custom was adhered to with deliberate indifference to the constitutional rights of [the jail's] inhabitants." *Castro*, 833 F.3d at 1076 (internal quotation and citation omitted) (alteration in original). This "objective inquiry" requires a showing that defendants were on "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights" of the jail's inmates. *Id*. (citation omitted).

The FAC plausibly alleges deliberate indifference by defendants. Plaintiffs contend that "Santa Rita Jail is not equipped with labor and delivery rooms or with other necessary and basic equipment and facilities that are needed to care for women in childbirth," *id.* ¶ 29, and that "CFMG staff at Santa Rita Jail are not trained in caring for women in childbirth," *id.* ¶ 30. This state of affairs supports a finding of deliberate indifference in that the jail lacked appropriate facilities to treat Steel, and the CFMG contract was a barrier to getting outside help. *See Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Additionally, the Sheriff's Office "knew" that its policy "might lead to a constitutional violation among its inhabitants," because it was bound by "regulations aimed at mitigating the risk of serious injury" to pregnant women in jail. *Castro*, 833 F.3d at 1076-77. *Castro* affirmed a jury's finding that the County of Los Angeles was deliberately indifferent to constitutional violations because it had adopted regulations that barred exactly the sort of cell design that were utilized in the jail at issue in that case. Here, the Sheriff's Office was bound by a state regulation that required a "pregnant inmate in labor [to] be treated as an emergency and [to] be transported via ambulance to [an] outside facility." Cal. Code. Regs. tit. 15, § 3355.2(j) (2018). It is clear that the Alameda County defendants "had notice that their customs or policies posed a substantial risk of serious harm to" pregnant inmates since their contract with CFMG made it less likely that inmates in labor would be taken to the hospital as required by regulation, and they "were deliberately indifferent to that risk." *Castro*, 833 F.3d at 1078.

On a more fundamental level, there can be no doubt that the way defendants treated a pregnant woman in labor is a textbook example of deliberate indifference. The FAC alleges that

defendants intentionally isolated Steel in a cell, and ignored her while she gave birth. A higher degree of indifference to a pretrial detainee's medical needs is hard to imagine.

Plaintiffs have alleged all the facts needed to hold the Alameda County Sheriff's Office responsible for their constitutional injuries under Section 1983. Since the Sheriff's Office does not dispute that plaintiffs' rights were violated, and the allegations in the FAC clearly meet the requirements established by *Gordon*, plaintiffs have adequately alleged civil rights claims for inadequate medical care against the Alameda County Sheriff's Office.

### III. THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST THE ALAMEDA COUNTY DEFENDANTS ARE DISMISSED

The claims for intentional infliction of emotional distress are barred by California statutory immunity. California Government Code § 845.6 protects public entities and their employees for injuries "caused by the failure of the employee to furnish or obtain medical care for a prisoner." Section 845.6 excepts from its protection "a public employee, and the public entity where the employee is acting within the scope of his employment . . . if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

Although it resulted in no real help, deputies did ask a CFMG nurse to look at Steel while she was in early labor, and so Section 845.6 is applicable and immunizes the Alameda County defendants from both plaintiffs' claims. According to the complaint, a nurse examined Steel after other prisoners reported "to the control staff that Plaintiffs was [*sic*] experiencing clear medical distress." Dkt. No. 10 ¶¶ 53-54. While the nurse egregiously concluded that Steel had "a stomachache, and [was] exaggerating her distress," *id.* ¶ 54, medical care was summoned, and that is enough for the Alameda County defendants to obtain immunity under Section 845.6. *See Castaneda v. Dep't of Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1074 (2013) ("Once summoned, the quality of medical care is a matter of medical policy and practice, imposing on medical practitioners a duty to exercise that degree of diligence, care, and skill possessed by other members of the profession, but it is not a violation of the employee's obligation to summon medical care under section 845.6.").

10

Plaintiffs say that Section 845.6 does not apply because they have not claimed medical malpractice, but that misses the mark. The immunity provision is not written in terms of causes of action like medical malpractice or IIED, but rather insulates public entities and their employees from liability for injuries "proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner." Cal. Gov't Code § 845.6. As currently alleged, the claims for IIED are an injury "proximately caused by the failure" to obtain medical care for Steel. For example, the FAC states, "Plaintiffs in fact suffered severe and extreme emotional distress due to being locked in an isolation cell at the Santa Rita Jail, without any medical care while in the throes of childbirth." Dkt. No. 10 ¶ 91. In fact, all the substantive paragraphs alleging a claim for IIED depend on the lack of medical care. *Id.* ¶¶ 90-92. The California Court of Appeal has recognized that Section 845.6 can protect covered entities from claims other than medical malpractice, including specifically IIED. *Wright v. State*, 122 Cal. App. 4th 659 (2004).

Consequently, the IIED claims are dismissed. While the Court has some doubt that plaintiffs can overcome the statutory bar in light of the facts alleged in the FAC, they are granted leave to amend these claims.

## IV. THE NEGLIGENCE PER SE CLAIM IS DISMISSED

Negligence per se is an evidentiary presumption of liability that arises if a defendant is shown to have "violated a statute, ordinance, or regulation of a public entity." Cal. Evid. Code § 669. Plaintiffs allege that the Sheriff's Office "violated [California Code of Regulations tit. 15,] § 3355.2(b), by failing to provide Steel, who had a confirmed pregnancy, the benefit of a treatment and care plan regimen." Dkt. No. 10 ¶ 96. The regulation, which has since been repealed but was in place when Steel was in custody, imposed an obligation on defendants to develop a plan of care "within seven days of arrival at" the facility. Cal. Code Regs tit. 15, § 3355.2(b) (2018).

The timeline in the FAC undermines any application of the regulation to Steel. She is alleged to have arrived at Santa Rita Jail on July 21, 2017, Dkt. No. 10 ¶ 37, and delivered Baby H on July 23 or 24, 2017, *id.* ¶¶ 51-62. Since Steel gave birth after less than a week in the custody of the Sheriff's Office, there is nothing on the face of the FAC to indicate that the Sheriff's Office violated Section 3355.2(b).

Plaintiffs have not provided a good reason for a different conclusion. While the plain language of the regulation did not bar the development of a plan before the 7-day deadline, it clearly did not require that. Plaintiffs mention some new regulations in opposition to the motion to dismiss, but those were not cited in the FAC and will not be considered for motion to dismiss purposes. Plaintiffs are granted leave to amend this claim, too.

## CONCLUSION

The motion to dismiss is granted and denied in part. Plaintiffs' Section 1983 claim against the Sheriff's Office will go forward. Plaintiffs did not oppose defendants' dismissal of their Fourth Amendment causes of action, and so those claims are dismissed with prejudice. Dkt. No. 15 at 11. All other claims against the Alameda County defendants are dismissed with leave to amend.

Plaintiffs may file an amended complaint by February 3, 2020, if they so choose. Plaintiffs may not add any new claims or defendants without prior approval by the Court.

The Court is advised that counsel for the parties are engaged in settlement negotiations before Magistrate Judge Laurel Beeler on a number of related of cases. If the parties believe ADR would be helpful in this case, they should file a request for a referral to Magistrate Judge Beeler by January 3, 2020.

**IT IS SO ORDERED.**

Dated: December 23, 2019

JAMES DONATO
United States District Judge